# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**January 10, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

ROGER DALE FARLEY,          )
       )
       )
      Plaintiff/Appellee,     ) Davidson Circuit No. 4848-C
       )
VS.        ) Appeal No. M1999-02155-COA-R3-CV
       )
AMBER (FARLEY) LEBLANC,   )
       )
       )
      Defendant/Appellant. )

APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE BARRY R. BROWN, JUDGE

**D. SCOTT PARSLEY**
**BARRETT, JOHNSTON & PARSLEY**
Nashville, Tennessee
Attorney for Appellant

**MARK T. SMITH**
Gallatin, Tennessee
Attorney for Appellee

**AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED**

ALAN E. HIGHERS, J.

**CONCUR:**

**DAVID R. FARMER, J.**

**WILLIAM C. KOCH, J.**

LeBlanc appeals the trial court's refusal to retroactively modify a child support order in this child support action. In addition, LeBlanc appeals the lower court's method of determining Farley's child support obligation with regard to his bonuses. Based upon the following, we reverse in part and affirm in part the lower court's judgment, and remand this case for further proceedings consistent with this opinion.

**Facts and Procedural History**

LeBlanc filed a Petition for Contempt in the Sumner County Circuit Court on February 28, 1998. In this petition, LeBlanc alleged that Farley had failed to comply with a paragraph in a prior child custody order that required him to provide wage information to LeBlanc. After a hearing on the matter, the trial court increased Farley's child support obligation but refused to apply the increase to the period prior to LeBlanc's filing of the petition. In addition, the trial court ordered that Farley pay thirty-two percent of his yearly bonus to LeBlanc as child support. LeBlanc appeals, based on the facts below.

An amended order regarding child support and custody of the parties' children, Ashleigh and Shawna, was entered in the Sumner County Circuit Court on December 17, 1996. Farley was awarded custody of Ashleigh, and LeBlanc was awarded custody of Shawna. The order also proportioned child support among the parties so that the party earning the higher wage paid a proportionate amount to the other party. At the time of this order, Farley was earning more than fifty thousand dollars per year and LeBlanc was earning approximately twenty-one thousand dollars per year. As a result, Farley was ordered to pay eighty-two dollars per week as child support to LeBlanc. Pursuant to this order, Farley was to pay his child support obligation by wage assignment, along with a five percent clerk's fee.

The order also contained provisions regarding visitation, expenses, and wage information. In particular, a provision of the order required Farley and LeBlanc to exchange

2

wage information, including tax forms, in February of each year.[1] This provision was to enable adjustments of the child support amount. Another provision instructed the parties to divide equally any medical expenses and outlined the procedure for receiving payment from the other party.

On February 26, 1998, LeBlanc filed a Petition for Contempt based on Farley's failure to provide the required wage information. In this petition, LeBlanc alleged that she had tried without success to obtain Farley's wage information for the 1996 and 1997 tax years. LeBlanc further alleged that she had provided her wage information as required by the order of October 11, 1996. In addition, LeBlanc asked that the court amend the paragraph in the order that required the parties to split the children's medical expenses.

While the Petition for Contempt was pending, LeBlanc filed a Petition to Change Custody regarding Ashleigh, the child who resided with Farley. On or about July 12, 1998, Ashleigh left the care of Farley and moved in with LeBlanc. Farley began voluntarily began paying an extra sixty-seven dollars a week directly to LeBlanc; this amount represented what Farley calculated his additional child support obligation would be for both children.

Both the petitions were heard by the court on October 16, 1998.[2] At the hearing, LeBlanc testified regarding the dispute over the tax forms and the calculation of the child support. LeBlanc stated that she had talked with Farley's wife several times regarding both the exchange of wage information and the payment of medical and dental bills. According to LeBlanc, she received only a hand-written note from Farley's wife stating the amount that LeBlanc owed and requesting that she pay that amount. LeBlanc claimed that she never received the copies of insurance forms detailing the charges as she requested.

At the hearing, Farley claimed his failure to provide the 1996 wage information was

---

[1] The paragraph reads as follows: The Petitioner and Respondent shall exchange wage information, including all W-2s or 1099s or any other documents evidencing income for the prior year, in February of each calendar year. The parties shall exchange this information between February 15th and 28th of each year. If child support should be adjusted based upon the wage information provided, the parties can either agree to a new amount which shall be placed in writing and filed with the Court or they may appear before the Court by filing an appropriate motion to ask the Court to set the appropriate amount of child support.

[2] The custody issue was uncontested at that time and LeBlanc was awarded custody of Ashleigh.

the result of LeBlanc's assurances that she did not need the information. Farley said that he did not provide his 1997 wage information because LeBlanc had not paid her part of the children's medical bills, and because she had not provided her information. Farley also testified regarding the varying amount of the bonuses received from his job and the financial difficulty he would face if these bonuses were averaged into his monthly wage calculation. Farley stated that his usual practice was to pay LeBlanc thirty-two percent of each bonus check as he received them and to provide her with a copy of the bonus check itself.

Farley's wife also testified at the hearing. Mrs. Farley testified about the conversations that occurred between herself and LeBlanc. According to Mrs. Farley, LeBlanc stated that she did not need Farley's 1996 tax forms because the difference from the previous year was only one thousand dollars. Mrs. Farley stated that she provided LeBlanc with copies of the children's medical bills, and that LeBlanc threw the bills out of her car window and refused to pay.

The court addressed only the issue of custody at the hearing. It did not dispose of any of the other issues raised in the petitions at that time. Both the amount of Farley's continuing child support obligation and the existence of any child support arrearage were disputed. The court took the issues under advisement pending submission of additional briefs.

In her brief, LeBlanc requested back child support of more than eighteen thousand dollars ($18,580.94) for the period between October 11, 1996, and October 23, 1998. In addition, LeBlanc asked that Farley's income, including bonuses, be averaged to determine his average monthly wage and child support obligation.

On February 5, 1999, the trial court entered an amended order with the following

4

determinations.[3]  The trial court set Farley's child support obligation at thirty-two percent of his weekly income.  The court awarded LeBlanc back child support for the period between February 6, 1998 and July 3, 1998 at twenty-one percent of Farley's wages.  In addition, the court awarded an arrearage for the period between July 10, 1998 and December 15, 1998 at thirty-two percent of Farley's wages.[4]  The court refused, however, to award back child support for the period prior to the filing of LeBlanc's Petition for Contempt on the basis that it would constitute retroactive modification of the child support agreement of December 1996.  Finally, the trial court ordered Farley to pay thirty-two percent of each bonus to LeBlanc within three days of receipt.[5]  The arrearage and bonus payments were to be paid directly to LeBlanc, rather than though the clerk's office.  LeBlanc filed a timely notice of appeal.

On appeal, LeBlanc asserts that the trial court erred by refusing to award a child support arrearage for the period between December 1996 and the filing of LeBlanc's petition for contempt on February 26, 1998.  LeBlanc asserts that to do so would be merely enforcing the December 1996 order, not a retroactive modification.  In addition, LeBlanc asserts that the trial court erred in failing to average Farley's bonuses into his income amount to determine his monthly child support obligation.

Farley asserts that the trial court erred in awarding child support from February 6, 1998, rather than February 26, 1998.  In addition, Farley asserts that this case should be remanded to the trial court in order to recalculate his child support obligation from a sum certain.  Farley asserts that this set sum should be an average of his bonuses since 1994 due to the variability of the bonuses awarded by his employer.

**Analysis**

---

[3] The original order was entered on January, 15, 1999.  The only substantive difference in the amended order was to delete references to the amount of back child support LeBlanc requested in her Petition for Contempt and to allow Farley to make payments directly to LeBlanc.

[4] The trial court deducted Farley's previous child support payments from the amount of the arrearage.

[5] The court also ordered Farley to pay twenty-one percent of the net income from his bonuses received from March 1, 1998 and July 3, 1998.  Farley was ordered to pay thirty-two percent of the net income from his bonuses received from July 3, 1998 and December 18, 1998.

5

LeBlanc raises two issues on appeal: whether the court erred in refusing to award increased child support for the period prior to LeBlanc's filing of a Petition for Contempt, and whether Farley's bonuses should be averaged and included in his monthly child support obligation. We find it appropriate to note that Farley raises an additional issue regarding what date an increase in child support should begin.[6] We find that the increase should be limited to the date that LeBlanc filed her petition. We now turn to the issues raised by LeBlanc.

## Retroactive Modification

On appeal, LeBlanc seeks an increased amount of child support for the period between the court's December 1996 order and the filing of her Petition for Contempt on February 26, 1998. LeBlanc claims that such an increase would be merely enforcement of the 1996 order. The lower court disagreed with LeBlanc's assertion, and found that an increase prior to the filing of LeBlanc's petition would constitute a retroactive modification. For the following reasons, we find that the lower court was correct.

Award and maintenance of child support is governed in part by Tenn. Code Ann. § 36-5-101. According to this statute, an order for child support is not subject to modification until an action for modification is filed and notice of the action is given.[7] The Tennessee Supreme Court found that this statute "specifically bars retroactive modification and puts the burden on the obligor [*plaintiff*] to come into court and seek any current or prospective

---

[6] The trial court mistakenly ordered an increase in child support beginning on February 6, 1998, rather than February 26, 1998, the date when LeBlanc filed her petition. Of necessity, an award from February 6 would include twenty days of increased child support qualifying as a retroactive modification. The award is therefore proper only from February 26, 1998.

[7] The relevant language provides as follows: Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state and shall be entitled to full faith and credit in this state and in any other state. *Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.* If the full amount of child support is not paid by the date upon which the ordered support is due, the unpaid amount is in arrears and shall become a judgment for the unpaid amounts and shall accrue interest from the date of the arrearage at the rate of twelve percent (12%) per annum. All interest which accumulates on arrearages shall be considered child support. Computation of interest shall not be the responsibility of the clerk.
Tenn. Code Ann. § 36-5-101(a)(5) (emphasis added).

relief to which he may be entitled, by means of a formal court order." <u>Rutledge v. Barrett</u>, 802 S.W.2d 604, 607 (Tenn. 1991).

The Eastern Section of this court recently addressed this issue under similar circumstances. <u>Varnell v. Varnell</u>, No. 03A01-9802-CH-00075,1998 WL 474080, (Tenn. App. 1998). In the <u>Varnell</u> case, a 1993 decree provided that Mr. Varnell was to pay child support in the amount of forty-one percent of his income, or seven hundred and seventy-five dollars per month. Mr. Varnell was to provide updated income information to Mrs. Varnell every six months in order to determine whether the amount should be changed. Mrs. Varnell received information from Mr. Varnell in October of 1995, indicating that his monthly child support obligation should be increased. However, Mrs. Varnell failed to file a motion for modification until February of 1997. At that time she sought an increased amount of child support dating back to October of 1995. <u>Id</u>. at *1.

The trial court granted Mrs. Varnell's request, and Mr. Varnell was ordered to pay additional child support from the October 1995 date. <u>Varnell</u> at *1. On appeal, the Eastern Section held that an award prior to Mrs. Varnell's filing of a motion for modification was not allowed. The Court stated, "It would then be incumbent upon the plaintiff to seek an increase in child support if the father's income so indicated. The record shows that the father did not furnish this information, nor did the mother seek it or ask the Court to increase the child support prior to the filing of the motion heretofore mentioned." Mrs. Varnell could not recover for any alleged shortfall in the child support obligation for the period prior to filing her action. Accordingly, the Court found that it could not adjust the amount of Mr. Varnell's child support until Mrs. Varnell established a basis in court to increase the amount of future support. <u>Id</u>. at *1-2.

LeBlanc attempts to distinguish the <u>Varnell</u> case by alleging that no documents were exchanged by the parties in <u>Varnell</u>. We fail to see how LeBlanc arrives at this determination. Mrs. Varnell averred in her motion that in October of 1995, Mr. Varnell provided her with income tax information which indicated that the amount of child support

7

being paid was less that what was due under the guidelines. <u>Varnell</u> at *1. While all the information required was not provided, Mrs. Varnell did clearly receive relevant information in October of 1995. <u>Id</u>. at *1-2. We are unpersuaded by LeBlanc's attempt to distinguish <u>Varnell</u> from the case before the Court.

We are persuaded that this case is in line with the facts and issue presented in <u>Varnell</u>. In both of these cases, parties sought an increased amount of child support for the period prior to the initiation of an action to recover. An award for the period prior to the filing of a motion or petition would constitute a retroactive modification of the child support order. <u>See</u> <u>also</u> <u>Ford v. Ford</u>, No. 01A01-9611-CV-00536, 1998 WL 730201 (Tenn. App. 1998) (restricting relief awarded to the actual date of filing of a petition for increased child support obligation). The trial court was correct in its refusal to make such an award for the period between December 1996 and February 26, 1998. Therefore, the judgment of the trial court is affirmed.

**Bonuses**

The second issue before the Court is whether or not Farley's bonuses should be included in his monthly average for child support. The trial court held that Farley was to pay thirty-two percent of each bonus check directly to LeBlanc within three days of receiving the bonus. On appeal, both parties request that the bonuses be averaged; LeBlanc requests that the bonuses be included in a monthly average, Farley requests that the bonuses be averaged over a five year period due to the great variability of the amounts.

The subject of bonuses is addressed in the Child Support Guidelines provided by the Tennessee Department of Human Services. Under these guidelines, bonuses are included in the gross income of a party in order to determine the child support obligation. The guidelines further provide that variable income, such as bonuses, should be averaged and added to the party's fixed salary. Tenn. Comp. R. & Regs. R. 1240-4-.03(3)(a-b). There is a rebuttable presumption in this state that the amount of support established by

8

the guidelines is proper. <u>See</u> Tenn. Code Ann. §36-5-101(e)(1). However, the fact that the presumption is rebuttable implies that trial courts have limited discretion to deviate from guidelines. <u>Jones v. Jones</u>, 930 S.W.2d 541, 542 (Tenn. 1996) (citing Tenn. Code Ann. § 36-5-101(e)(1); Tenn. Comp. R. & Regs. 1240-2-4-.01 to 2-4-.04).

Under the circumstances in this case, Farley's bonuses are clearly subject to great variability. Farley usually receives a relatively small bonus check each month, with a large bonus at the end of the year. These bonuses fluctuate depending on the business performance of Farley's employer. Due to this variability, we find that Farley's child support obligation from these bonuses should be recalculated to a set sum. This sum should be based on a three year average of Farley's bonus income to account for the yearly variation in the bonus amounts. Therefore, this lower court's decision on this issue is reversed and this case is remanded to for the calculation of a sum certain in manner consistent with this opinion.

**Conclusion**

Based on the foregoing, the judgment of the trial court is hereby affirmed in part, reversed in part, and remanded. Costs on appeal are taxed to the appellant, LeBlanc, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
KOCH, J.

10